REVISED March 6, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-21050
_____

LESLIE PARNELL FELDER

                                    Petitioner - Appellant

v.

GARY L JOHNSON, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION

                                    Respondent - Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

February 9, 2000

Before KING, Chief Judge, and REYNALDO G. GARZA and EMILIO M. GARZA, Circuit Judges.

KING, Chief Judge:

Petitioner Leslie Parnell Felder appeals from the district court's dismissal of his 28 U.S.C. § 2254 petition, arguing that the court erred in concluding his petition was time-barred.  He argues that his circumstances warrant equitable tolling.  Those circumstances include (1) his incarceration before AEDPA's effective date; (2) his litigating pro se; (3) his claiming that

1

he is innocent of the crime for which he was convicted; and (4) his alleged unawareness of AEDPA's requirements (as judicially interpreted) due to inadequacies of his prison's library, which he claims made the law's text inaccessible throughout his one-year grace period. Because we find these circumstances to be clearly insufficient to warrant equitable tolling, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Having been initially charged with capital murder, Leslie Parnell Felder ("Felder") was sentenced in December 1987 to life in prison after pleading guilty to aggravated robbery. Felder did not directly appeal his conviction and sentence. He subsequently filed applications for state habeas relief on January 11, 1993, January 13, 1995, and February 11, 1997. The first two applications were denied on the merits on March 31, 1993 and on April 10, 1996. The third was dismissed on April 30, 1997 for abuse of the writ.

Felder filed the instant § 2254 petition on July 29, 1997. On October 27, Respondent filed a motion to dismiss the petition as time-barred under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). In his response, Felder claimed that he had not been aware of AEDPA's limitations period until after he received

2

Respondent's motion to dismiss.[1]

The district court granted Respondent's motion to dismiss the petition as time-barred under § 2244(d). It correctly noted that the limitations period imposed by AEDPA became effective on April 24, 1996. See 28 U.S.C. § 2244(d)(1) (1999) (providing one-year period after state court judgment becomes final to file federal habeas petition, subject to certain exceptions).[2] We have granted petitioners whose convictions became final before that effective date a one-year grace period, requiring them to file their § 2254 applications by April 24, 1997. See Flanagan v. Johnson, 154 F.3d 196, 200 n.2 (5th Cir. 1998); United States v. Flores, 135 F.3d 1000, 1006 (5th Cir. 1998) (announcing one-year grace period in context of § 2255 petitions). The district court noted that Felder's application was filed ninety-nine days after the end of his grace period. Felder's third state application, which was dismissed for abuse of the writ, was

---

[1] Felder, proceeding pro se, did not specifically state in his Response to Respondent's Motion to Dismiss that he was unaware of AEDPA because the Eastham Unit law library did not receive a copy of AEDPA prior to his filing his federal petition. However, Felder refers in his attached affidavit to deficiencies of the prison law library. He also refers in his Response to affidavits attached to his motion requesting counsel. In those affidavits, prisoners Johnny J.E. Meadows and Harold T. Tarter attest to library inadequacies. Thus, the claim that he was unaware of AEDPA because of library inadequacies is implicit in Felder's Response. Felder also argued that application of AEDPA's limitations period to his case was unconstitutional.

[2] Prior to AEDPA, there was no statute of limitations on federal habeas claims. See Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998).

pending for seventy-eight days. Even if this petition was deemed "properly filed" under § 2244(d)(2), and therefore tolled the statute of limitations during its pendency, Felder's § 2254 petition was filed late.[3]

Felder filed a motion for reconsideration of the dismissal. In that motion, Felder restated his argument that AEDPA's limitations period was unconstitutional as applied, and also alleged that his case fell under § 2244(d)(1)(B). Felder again referred to the Tarter and Meadows affidavits and claimed to have shown that AEDPA was not available to him until at least September 1997 – after the expiration of his limitations period.

On July 23, 1998, the district court "reluctantly" denied Felder's motion for reconsideration. It "interpret[ed] the applicable authorities" to allow only the one-year grace period, citing Flores.[4] However, the district court concluded that "the application of the grace period under Flores, supra, is a matter debatable among jurists of reason." Construing the motion for reconsideration as a request for a Certificate of Appealability ("COA"), the district court granted a COA as to whether Felder's petition "may be deemed timely filed under AEDPA, under

_____

[3] We have since held that a Texas state habeas petition dismissed for abuse of the writ is "properly filed" under § 2244(d)(2) and therefore tolls the statute of limitations in § 2244(d)(1). See Villegas v. Johnson, 184 F.3d 467 (5th Cir. 1999).

[4] Flanagan, issued on September 21, 1998, was not yet available.

4

circumstances consisting of the following": Felder (1) was incarcerated before AEDPA's effective date; (2) is litigating pro se; (3) claims he is innocent of the crime for which he was convicted; (4) claims that he was unaware of AEDPA's requirements (as judicially interpreted), and (5) claims that he lacked access to the law's text during his one-year grace period.

## II. DISCUSSION

In his appellate reply brief, Felder specifically contends that equitable tolling of AEDPA's statute of limitations is warranted under the circumstances discussed by the district court.[5] None of the district court's orders in this case, nor any of Felder's prior filings, addressed equitable tolling. We

---

[5] Respondent argues that because Felder did not address in his initial brief the issue of whether his lack of knowledge of AEDPA's requirements warranted equitable tolling, he was waived the issue. See, e.g., DSC Communications Corp. v. Next Level Communications, 107 F.3d 322, 326 n.2 (5th Cir. 1997) ("[A] party who fails to raise an issue in its initial brief waives the right to review of that issue."). In his initial appellate brief, Felder stated the issue on which a COA was granted, "rest[ed] his challenge" to the adequacy of the law library on the Tarter and Meadows affidavits, and explicitly linked his ignorance of AEDPA's requirements to the library's inadequacies. He did not, however, specifically state that the statute of limitations should be equitably tolled. Instead, he cited to Easter v. Endell, 37 F.3d 1343 (8th Cir. 1994), a case involving the question of whether it was appropriate for the court to exercise its "equitable power to look beyond a state procedural bar and proceed to the merits of a habeas corpus petition." Id. at 1345. Given Felder's statements in his initial brief, and considering, as we must, his pro se status, we do not consider the issue of whether Felder's lack of notice warrants equitable tolling waived.

5

note that the court did not have the benefit of our opinion in
Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998), cert. denied, 119
S. Ct. 1474 (1999).[6]

In Davis, we held, as a matter of first impression, that the
AEDPA one-year limitations period was a statute of limitations,
not a bar to federal jurisdiction.  See id. at 807.  As a statute
of limitations, it could be equitably tolled, albeit only in
"rare and exceptional circumstances."[7]  Id. at 811; see also
Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999) (asserting
that courts must "examine each case on its facts to determine
whether it presents sufficiently 'rare and exceptional
circumstances' to justify equitable tolling" (quoting Davis, 158
F.3d at 811)).  We have since provided additional insight into
the types of circumstances that may be seen as rare and
exceptional.  In Coleman v. Johnson, 184 F.3d 398 (5th Cir.
1999), for example, we stated that "'[e]quitable tolling applies
principally where the plaintiff is actively misled by the
defendant about the cause of action or is prevented in some
extraordinary way from asserting his rights.'"  Id. at 402

---

[6]  The district court's reconsideration order was issued on
July 23, 1998.  Davis was issued on October 21, 1998.

[7]  In Davis, the petitioner's filing was well after the
grace period allowed by Flanagan.  In holding that § 2244(d)(1)
was a statute of limitations that could be equitably tolled,
Davis did not distinguish between the one-year AEDPA limitations
period and the one-year Flanagan grace period granted to
prisoners, like Felder, whose convictions became final before
AEDPA's effective date.  See 158 F.3d at 811.

6

(quoting Rashidi v. American President Lines, 96 F.3d 124, 128 (5th Cir. 1996)). It is undisputed that, if equitable tolling for at least twenty-one days of Felder's one-year grace period is unwarranted, Felder's petition must be dismissed as untimely.

In light of Davis and our other jurisprudence, the circumstances enumerated by the district court in granting a COA are clearly insufficient to warrant equitable tolling. We have held that a petitioner's incarceration prior to AEDPA's passage does not present an extraordinary circumstance warranting equitable tolling. See Fisher, 174 F.3d at 714 (noting that AEDPA's one-year grace period affected hundreds of prisoners, none of whom learned of it on its effective date). Likewise, proceeding pro se is not a "rare and exceptional" circumstance because it is typical of those bringing a § 2254 claim. Cf. United States v. Flores, 981 F.2d 231, 236 (5th Cir. 1993) (holding pro se status, illiteracy, deafness, and lack of legal training are not external factors excusing abuse of the writ); Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991) (holding equitable tolling of limitations within the Age Discrimination in Employment Act not warranted by plaintiff's unfamiliarity with legal process, his lack of representation, or his ignorance of his legal rights). Felder's actual innocence claim also does not constitute a "rare and exceptional" circumstance, given that many prisoners maintain they are

7

innocent.[8]

Felder has linked the fourth and fifth circumstances, arguing that he did not have notice of AEDPA's requirements due to inadequacies of his prison's law library. He contends that without notice of AEDPA's requirements, he was denied the opportunity to timely file his petition. Because Felder clearly filed his petition before becoming aware of AEDPA's requirements, his unawareness of the law arguably has not "prevented in some extraordinary way [his] asserting his rights." Coleman, 184 F.3d at 402.[9]

In Fisher, we rejected a petitioner's claim that he was entitled to equitable tolling for the forty-three day period between AEDPA's effective date and the date on which he received actual notice of AEDPA. See 174 F.3d at 714. We gave a number of reasons for our decision, including the fact that "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing." Id. To support this reasoning,

---

[8] Felder has not made a showing of actual innocence, as the district court noted.

[9] His filing his petition prior to September 1997, the time he alleges he had access to AEDPA, would also appear to make § 2244(d)(1)(B) unavailable to Felder. Under § 2244(d)(1)(B), the limitation period begins to run on "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United State is removed, if the applicant was prevented from filing by such State action." Cf. United States ex rel. Morgan v. Gilmore, 26 F.Supp.2d 1035, 1039 (N.D. Ill. 1998) ("Even if the court assumes that the lock-down constitutes state action, it did not prevent Morgan from filing 'an application.'").

8

we cited prior decisions of this court holding that mere ignorance of the law or lack of knowledge of filing deadlines does not justify equitable tolling or other exceptions to a law's requirements.  See id. at 714 n.13 (citing Saahir v. Collins, 956 F.2d 115, 118-19 (5th Cir. 1992) (holding that neither prisoner's pro se status nor ignorance of the law constitutes "cause" for failing to include a claim in a prior petition), and Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991) (holding that "lack of knowledge of the filing deadlines" does not justify equitable tolling)).  We could have just as easily cited to other cases for the same "ignorance of the law is no excuse" proposition.  See, e.g., Quina v. Owens-Corning Fiberglas Corp., 575 F.2d 1115, 1118 (5th Cir. 1978); Howard v. Sun Oil Co., 404 F.2d 596, 601 (5th Cir. 1968).

Other language in Fisher would appear to lend support to Felder's argument that his circumstances warrant equitable tolling.  See Fisher, 174 F.3d at 715 ("In the right circumstances, a delay in receiving information might call for equitable tolling – such as if the prison did not obtain copies of AEDPA for months and months . . . .").  This language is dicta, however, and we need not follow it.  Moreover, in addition to our long line of cases holding that mere ignorance of the law or of statutes of limitations is insufficient to warrant

9

tolling,[10] we have Congress' language in § 2244(d) to support our similar conclusion in this case.

In defining the one-year statute of limitations in § 2244(d), Congress explicitly laid out three circumstances under which the statute of limitations would begin to run after the date on which the prisoner's judgment became final. See §§ 2244(d)(1)(B),(C),(D). We have previously noted that Congress did not provide for tolling based on a failure to receive timely notice. See Fisher, 174 F.3d at 714 ("Congress knew AEDPA would affect incarcerated individuals with limited access to outside information, yet it failed to provide any tolling based on possible delays in notice."). Although in Davis we in effect suggested that circumstances beyond those indicated by Congress may warrant equitable tolling, we must nonetheless be mindful of

---

[10] Our conclusion that Felder's unawareness of AEDPA's requirements is insufficient to warrant tolling is also consistent with the determinations of other courts that have faced similar claims. See, e.g., Miller v. Marr, 141 F.3d 976, 978 (10th Cir.) (holding equitable tolling not warranted to prisoner claiming he lacked access to federal statutes and case law, and only learned of AEDPA's time limitations sometime after April 29, 1997), cert. denied, 119 S. Ct. 210 (1998); United States v. Griffin, 58 F.Supp.2d 863, 869 (N.D. Ill. 1999) (declining to toll because of petitioner's lack of awareness of AEDPA's enactment until he entered the federal prison system in 1997, and stating that "such a run-of-the-mill claim of ignorance of the law is insufficient to warrant equitable tolling," citing our decision in Fisher in support); Bilodeau v. Angelone, 39 F.Supp.2d 652, 659 n.1 (E.D. Va.) (concluding that ignorance of the law does not warrant tolling), appeal dismissed by 182 F.3d 906 (4th Cir. 1999); Fadayiro v. United States, 30 F.Supp.2d 772, 781 (D.N.J. 1998) ("That Fadayiro may have been unaware of the new limitations period of Section 2255 also is not sufficient to toll the statute of limitations.").

10

the framework Congress established in § 2244(d).  Cf. Fisher, 174

F.3d at 713 (noting that "the Supreme Court has expressed

deference to the rules that Congress fashioned concerning

habeas").  Viewing §§ 2244(d)(1)(B),(C), and (D) as providing

Congress' description of "extraordinary circumstances," cf.

Taliani v. Chrans, 189 F.3d 597, 598 (7th Cir. 1999) (noting the

existence of § 2244(d)(1)(D), which is described as an

"equitable-tolling provision," and of other express tolling

provisions of § 2244(d)), suggests that we should not toll unless

the circumstances presented in a particular case are on a par

with the conditions listed in § 2244(d).  None of Felder's

circumstances, and particularly not his ignorance of the law, can

be said to be on a par with those conditions.

That ignorance of the law is insufficient is, in fact,

supported by the language of § 2244(d)(2).  In that tolling

provision, Congress provided that "the time during which a

properly filed application for State post-conviction or other

collateral review with respect to the pertinent judgment or claim

is pending shall not be counted toward any period of limitation

under this subsection." § 2244(d)(2).  The "properly filed"

limitation indicates that Congress does not view ignorance of the

law as a sufficient reason for tolling, for a "properly filed"

petition would be one that was filed within any statute of

limitations the state imposes.  See Villegas v. Johnson, 184 F.3d

467, 469 (5th Cir. 1999).

11

We are mindful of the effect a dismissal will have on Felder's ability to have his claims heard by a federal court. This is his first federal habeas petition. We are also mindful of the Supreme Court's cautionary statements in Lonchar v. Thomas, 517 U.S. 314, 324 (1996) ("Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty."). It is the case, however, the Felder's circumstances are clearly not among those "rare and exceptional" conditions that warrant deviation from both the express rules Congress has provided and the grace-period we have already granted prisoners whose convictions were final before AEDPA's effective date. To hold otherwise would characterize as "rare and exceptional" circumstances that countless other prisoners could claim as their own. Cf. Fisher, 174 F.3d at 715 ("[T]he same concept would apply equally to many other prisoners and in different variations of delayed information, becoming a judicial tolling rule. Such broad decisions are for Congress, not equity.").

## III. CONCLUSION

For the above reasons, the district court's dismissal of petitioner's claim is AFFIRMED.

12

EMILIO M. GARZA, Circuit Judge, dissenting:


I agree with the majority that petitioner Leslie Parnell Felder's incarceration, pro se status, and claim of actual innocence do not warrant equitable tolling of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations. I do not agree with the majority's decision to deny Felder's claim for equitable tolling based on his alleged ignorance of AEDPA, which Felder has attributed to the statute's complete inaccessibility to him throughout his § 2254 filing period. Under the circumstances, the majority's decision is at least premature. I therefore respectfully dissent.

Felder claims that he is entitled to equitable tolling of the AEDPA statute of limitations because he had no notice of AEDPA until he received Respondent's motion to dismiss.[11] Felder directly attributes this actual ignorance to the fact that the AEDPA was not available from the Eastham Unit library until September 1997))seventeen months after AEDPA's enactment, and several months after the expiration of Felder's grace period for filing his § 2254 petition. *See Flanagan*, 154 F.3d at 200 n.2.

---

[11] As the majority notes, prior to AEDPA's April 24, 1996 effective date there was no statute of limitations on federal habeas claims. *See Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998). AEDPA imposed a one-year limitations period. *See* 28 U.S.C. § 2244(d)(1) (1999) (providing one-year period after state court judgment becomes final to file federal habeas petition, subject to certain exceptions).

13

Felder has submitted supporting affidavit testimony from other Eastham Unit inmates also alleging that the AEDPA was unavailable until September 1997. Felder's own affidavit specifically attests that, had Felder known of AEDPA, he would have filed his § 2254 petition within the one-year grace period.[12]

The majority relies neither on an evaluation of the credibility of Felder's claims nor on other factual circumstances particular to this case.[13] Instead, it sets forth a blanket rule that actual ignorance of the AEDPA limitations period, even if attributable to the newly-enacted statute's complete unavailability to inmates, can never be a basis for equitable tolling. I believe that this new rule is not consistent with the purposes of equitable tolling of the AEDPA limitations period.

---

[12] In its appellate brief, Respondent had the opportunity to provide evidence contradicting Felder's allegations. He failed entirely to do so.

[13] Our cases suggest that Felder's diligence in pursuing his federal claims after his final state habeas petition was dismissed might impact his equitable tolling claim. *See Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999). Felder's diligence in obtaining the statute is another relevant factual question; only by showing such diligence can Felder show that his lack of access to AEDPA was either 1) beyond his control or 2) actually caused his failure to timely file his § 2254 petition. *See Vasquez v. Greiner*, 68 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (refusing to dismiss claim for equitable tolling based on appellate attorney's alleged failure to inform petitioner of the Court of Appeals' denial of his direct appeal; but noting that equitable tolling might prove "unwarranted on all the facts and circumstances," such as if, after a hearing, 1) the petitioner's claims prove incredible in light of the weight of the evidence; or 2) the evidence indicates that the "petitioner, in the exercise of reasonable diligence, should have known of the Court of Appeals' decision at an earlier date").

14

Nor is it supported by the available case law.

The majority is correct to note that ignorance of the law is not itself a basis for equitable tolling of a statute of limitations, even for pro se prisoners. *See*, *e.g.*, *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999). But Felder's claim is not based merely on ignorance of the law. It is based on an ignorance of the law allegedly created by the prison's denial of access to AEDPA for seventeen months after its enactment. Equitable tolling is appropriate when an extraordinary factor beyond the plaintiff's control prevents his filing on time. *See Davis v. Johnson*, 158 F.3d 806, 811, (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1474 (1999) (equitable tolling appropriate in "rare and exceptional circumstances" where equity demands it); *Coleman*, 184 F.3d at 402 (equitable tolling is limited to circumstances where plaintiff is misled by defendant or "prevented in some extraordinary way from asserting his rights"); *Calderon v. United States Dist. Ct.*, 163 F.3d 530, 541 (9th Cir. 1998) (equitable tolling is appropriate if "extraordinary circumstances beyond a prisoner's control" prevent timely filing of § 2254 petition). The unavailability of the newly-enacted AEDPA to a prisoner is an external factor beyond his control. Given that AEDPA imposed a statute of limitations on the filing of § 2254 petitions for the first time, if the statute was completely unavailable during a prisoner's entire period for

15

filing his § 2254 petition, it might prevent him from timely filing his petition. Such a result would be))indeed, must be))"extraordinary."[14] I therefore do not believe that we can establish a blanket rule that actual ignorance of the newly-enacted AEDPA statute of limitations, even if resulting from a prison's failure to allow access to the statute for a petitioner's entire filing period, can never be grounds for equitable tolling.

Adopting such an overbroad rule also fails to comport with the equitable nature of the remedy. "The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Davis*, 158 F.3d at 810. "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher*, 174 F.3d at 713. Instead, "we and the district court must examine each case

---

[14] I disagree with the majority's contention that such circumstances cannot be "rare and exceptional" because "countless other prisoners could claim [them] as their own." Empirically, I believe that the complete denial of access to the newly-enacted AEDPA for a period greater than twelve months is "rare and exceptional." Legally, such a denial's actually leading to the dismissal of a first § 2254 petition as time-barred must be "rare and exceptional" in light of the Constitution. *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed. 2d 606, __ (1996) (to show violation of constitutional right of access to courts, a prisoner "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known").

16

on its facts to determine whether it presents sufficiently 'rare and exceptional' circumstances to justify equitable tolling." *Id.* (citing *Davis*, 158 F.3d at 811). The need to adhere to these equitable precepts is heightened because "dismissal of a first habeas petition is a particularly serious matter," *Lonchar v. Thomas*, 517 U.S. 314, 324, 116 S.Ct. 1293, 1299, 134 L. Ed. 2d 440, __ (1996), subject to constitutional challenge.

No court that has acknowledged the possibility of equitable tolling has held that actual ignorance of AEDPA, resulting from the denial of access to the newly-enacted statute, can never be a basis for equitable tolling. Only two of the cases cited by the majority address such a claim, as opposed to equitable tolling claims based on ignorance of the law alone. Those cases))the only published cases addressing the issue))are *Fisher* and *Miller v. Marr*, 141 F.3d 976, 978 (10ᵗʰ Cir. 1998).

In *Fisher*, we rejected a petitioner's claim for equitable tolling based on the forty-three day delay between AEDPA's effective date and the date the statute arrived in the prison library. *Fisher*, 174 F.3d at 714. We concluded that "equity simply does not call for tolling on these facts. Even after learning of AEDPA's limitations period, Fisher had 322 days to complete his § 2254 petition. That is more than enough time." *Id.* at 715. We then noted, "In the right circumstances, a delay in receiving information might call for equitable tolling–such as

17

if the prison did not obtain copies of AEDPA for months and months." *Id.* Adding that this "was not the case here," we found that "Fisher has not shown a rare and exceptional circumstance that calls for equity to intervene." *Id.*

The "months and months" statement in *Fisher* is dicta. But it suggests that the *Fisher* court not only considered that the question before us would arise, but might have reached a different outcome from the majority here. More importantly, the statement–and the entire discussion of whether equity "call[s] for tolling on these facts"))explicitly refutes the suggestion that *Fisher* intended to establish a bright-line rule that actual ignorance of AEDPA resulting from a denial of access to the statute can never be a basis for equitable tolling. In its disavowal of such a rule, this section is consistent with the *Fisher* opinion as a whole, which continually emphasizes that equitable tolling, as an equitable remedy, hinges on the facts of a particular case. *See id.* at 712 (stating that, as a discretionary doctrine, equitable tolling is unsuited to bright-line rules); *id.* at 713 (noting that each case must be examined on its facts to see if equitable tolling is warranted); *id.* at 714 (holding that equity does not entail tolling on these facts). Therefore, while *Fisher* admittedly is not dispositive of Felder's claim, I find it inconsistent with the broad rule established by the majority.

18

*Miller* also fails to support the majority's rule. While the *Miller* court was not presented with an equitable tolling claim, it did note in deciding that the AEDPA limitations period did not violate the Suspension Clause that equitable tolling was possible, and declined to equitably toll for Miller. *See Miller,* 141 F.3d at 978. Miller apparently claimed that his prison library's denial of access to "all relevant statutes and case law" until April 1997 both rendered it impossible to fill out his § 2254 petition and left him ignorant of AEDPA. *Id.* The court's brief analysis of the equitable tolling issue did not state that a claim of actual ignorance of AEDPA resulting from a denial of access to its text could never be a basis for equitable tolling. Instead, it appeared to rely on certain "individual circumstances"—in particular, that "Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims." *Id.* (citing *Lewis*, 518 U.S. at 349-350, 116 S. Ct. at 2179, 135 L.Ed at __).[15] Subsequent Tenth Circuit cases have not read *Miller* to

_____

[15]    Unlike Felder, Miller apparently claimed that the denial of access to all texts both precluded him from completing his § 2254 petition *and* left him actually ignorant of AEDPA. *See id.* The Tenth Circuit did not separately analyze Miller's two claims. *See id.* Seemingly referring to the impossibility argument, the court noted two other relevant circumstances: 1) Miller's unexplained failure to diligently pursue his federal claims—Miller's sole state petition for post-conviction relief was denied in October 1993, and he admittedly had full access to relevant texts until January 1995, yet he did not file his federal petition until July 1997; 2) the similarities between

19

establish the rule the majority adopts today.[16]

Having declined to adopt the majority's bright-line rule, I find it premature to decide this case without any factual record, in light of the unique circumstances present.

---

Miller's § 2254 claims and those in his direct appeal and state postconviction motion. *See id.* These circumstances, particularly the latter, while clearly refuting Miller's claim that he could not have completed his federal petition without additional research access, do not seem relevant to his claimed actual ignorance of AEDPA.

[16] In *Bradley v. Poppel*, 1999 WL 992981, (10th Cir., Nov. 2, 1999) (unpublished), Bradley claimed equitable tolling based on 1) the unavailability of trained law clerks to assist him with his defense; 2) his ignorance of the law; and 3) an inadequate law library. *See id.* at *2. The court rejected Bradley's first and second claims with reference to established rules, noting that there is no right to legal counsel in collateral proceedings and that ignorance of the law does not warrant equitable tolling. *See id.* The court conspicuously failed to rely on such an ironclad rule in disposing of Bradley's third claim. Instead, it held that "Bradley's conclusory allegation that prison library facilities are inadequate is also insufficient to justify equitable tolling." *Id.* (citing to *Miller*'s statement that equitable tolling is unwarranted where the inmate has "provided no specificity" in his allegations).
Likewise, in *Rodriquez v. Klinger*, 1999 WL 394562 (10th Cir., June 16, 1999) (unpublished), Rodriquez sought equitable tolling because the prison warden "failed to provide him a copy of AEDPA." *Id.* at 1. The Tenth Circuit noted that the district court had held that Rodriquez was not entitled to equitable tolling because he was insufficiently diligent in pursuing his claims. *Id.* In particular, the court emphasized the district court's finding that Rodriquez had never *requested* a copy of AEDPA, even though he had access to an inmate research assistant who could have provided the necessary information. *See id.* In light of these findings, and emphasizing that it had closely reviewed the entire record, the Tenth Circuit affirmed the denial of equitable tolling.
Like *Miller*, both cases appear to rely on individual circumstances. Neither opinion is consistent with *Miller*'s having established a rule that equitable tolling based on a denial of access to AEDPA can never exist.

The circumstances here differ significantly from those in *Fisher*. Fisher's forty-three day delay in receiving notice of AEDPA was, as we noted, "not rare." *Fisher*, 174 F.3d at 714. The seventeen-month delay alleged by Felder is, on its face, far more likely to be a "rare and exceptional" circumstance. Unlike the delay in *Fisher*, it is also prejudicial, and thus susceptible to equitable intervention. If Felder's allegations are true, his grace period had expired by the time he learned of the time limit. Thus, the fact relied upon by the *Fisher* court in finding that "equity does not call for tolling on these facts" would not apply here. *See id.* at 715 ("Even after learning of AEDPA's limitations period, Fisher had 322 days to complete his § 2254 petition."). Applying the *Fisher* standard, if Felder's allegations are true, equity might "call for tolling" here. The *Fisher* "months and months" dicta, *id.*, merely confirms that Felder's different circumstances may warrant a different result.

Likewise, the circumstances apparently relied upon in *Miller* do not exist here. Felder's final state post-conviction petition was dismissed in April 1997, only three months before he filed his § 2254 petition. More importantly, Felder's allegations are not merely general and conclusory. Felder has specifically alleged that his failure to comply with AEDPA's time limit resulted from the statute's unavailability to Eastham Unit

21

inmates until September 1997, and has presented affidavit testimony supporting this specific allegation. Respondent was given an opportunity to rebut these allegations and failed entirely to do so. Each of these circumstances appears to differ from *Miller*.

I therefore cannot decide at this stage, as a matter of law, that Felder's circumstances are not "rare and exceptional," *Davis*, 158 F.3d at 811. Nor can I decide with certainty that it is not "inequitable" to decline to toll for at least twenty-one days. *Id.* at 810 (noting that equitable tolling is warranted when "strict application of the statute of limitations would be inequitable"); *see also Fisher*, 174 F.3d at 713 (citing *Lonchar* and noting that, in light of the importance of the right to bring a first habeas petition, "we must be cautious not to apply the statute of limitations too harshly"); *cf. Lewis*, 518 U.S. at 351, 116 S.Ct. at 2180, 135 L.Ed. 2d at __ (stating that, to show violation of constitutional right of access to courts, a prisoner "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known"). Any such determination is premature.

As the majority discusses, Felder has not had the opportunity to present his equitable tolling claim to the

district court. The district court's inability to consider the issue means that there has been no factual development whatsoever. To determine whether Felder's circumstances warrant equitable tolling, it is necessary both to assess the veracity of Felder's assertions and to develop the other factual circumstances that may bear on this legal determination. *See*, *e.g.*, *Fisher*, 174 F.3d at 715 (stating that, as it depends on individual facts and circumstances, decision whether equitably toll is "left to the district court's discretion" and is reviewed for abuse of that discretion).

Without expressing any opinion as to its merit, I would therefore remand for the district court to assess Felder's equitable tolling claim for the first time, conducting such fact-finding as it finds necessary to determine 1) whether Felder can establish that his factual allegations))including actual ignorance of AEDPA until September 1997 resulting from its unavailability to Eastham Unit inmates))are true; and 2) if so, whether Felder's circumstances as a whole are the "rare and exceptional" circumstances, *Davis*, 158 F.3d at 811, in which equity compels us to toll the AEDPA statute of limitations. As, in light of this court's jurisprudence, I find the majority's election to instead decide this case on legal grounds premature, and the rule it establishes overly sweeping, I dissent.

23